IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ERIC S. ENGUM,<br>Cross Park Plaza, Suite D266<br>9111 Cross Park Drive<br>Knoxville, TN 37923<br><br>        Plaintiff,<br><br>    v.<br><br>AMERICAN PSYCHOLOGICAL<br>ASSOCIATION, INC.,<br>750 First Street NE<br>Washington, DC 20002;<br>and<br><br>AMERICAN PSYCHOLOGICAL<br>ASSOCIATION PRACTICE<br>ORGANIZATION<br>750 First Street NE<br>Washington, DC 20002,<br><br>        Defendants. | **CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Dr. Eric S. Engum ("Plaintiff") individually and on behalf of all others similarly situated, alleges by and through his attorneys, upon information and belief as to matters pertaining to himself, and as to all other matters based on public information and investigation of his counsel, as follows:

**INTRODUCTION**

1

1.     This is a class action lawsuit brought on behalf of a nationwide class of current and former American Psychological Association members who were negligently or intentionally deceived into paying special assessment fees with their annual dues.

2.     This action arises from Defendant American Psychological Association's ("APA") failure to disclose to its members that the fee imposed on them was not a required payment for practicing clinical psychologists.

3.     The APA mislead its membership to obtain money for a political organization that would not have been collected had everyone known it was not mandatory for APA membership.

4.     Upon information and belief, Defendants have been aware for years of the true nature of the special fees assessed with the annual APA member dues. In spite of this knowledge, Defendants have intentionally withheld from, and/or misrepresented to Plaintiff and other APA members this material information.

5.     As a result of Defendants' unlawful practices, as set forth herein, APA members have spent a significant amount of money on assessment fees they were not required to pay.

**JURISDICTION AND VENUE**

6.     The Court has original jurisdiction over this class action pursuant to 28 U.S.C. § 1332(d)(2).

7.     Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(a)(1) because Defendants are located in this judicial district. Venue is also proper pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

8.     The members of the putative Class have suffered aggregate damages exceeding $5,000,000, exclusive of interest and costs.

**PARTIES**

9.     Plaintiff Dr. Eric S. Engum is a resident of Knoxville, Tennessee. Plaintiff has been an APA member since approximately 1978. Plaintiff estimates he has paid a special or practice assessment fee since 1985.

2

10.     Defendant American Psychological Association ("APA") is nonprofit corporation with its principal place of business located at 750 First Street NE, Washington, DC 20002.   The APA conducts business throughout the United States, including this District.

11.     Defendant American Psychological Association Practice Organization ("APAPO") is a nonprofit corporation with its principal place of business located at 750 First Street NE, Washington, DC 20002.   The APAPO conducts business throughout the United States, including this District.   The APAPO shares the same board of directors, the same physical address, the same server hosting company, the same membership list, and the same accounting and billing systems as the APA.   The APA and the APAPO are collectively referenced as "Defendants."

12.     At all times herein mentioned, each of the Defendants was the agent, servant, representative, officer, director, partner or employee of the other.   At all times, each of the Defendants was acting within the scope and course of his/her/its authority as such agent, servant, representative, officer, director, partner or employee, and with the permission and consent of each Defendant.   Additionally, at all times herein mentioned, Defendants were members of, and engaged in, a joint venture, partnership and common enterprise, and acting within the course and scope of, and in pursuance of the joint venture, partnership and common enterprise.

## TOLLING

13.     Plaintiff and members of the proposed Class did not discover, and could not have discovered through the exercise of reasonable diligence, the existence of Defendants' conduct. Because Defendants' conduct was hidden by them, Plaintiff and proposed Class members were unaware of it.   The acts of Defendants alleged herein were wrongfully concealed and carried out in a manner that precluded detection.   A reasonable person under the circumstances would not have been alerted to investigate Defendants' conduct.   As a result of Defendants fraudulent concealment, the running of any statute of limitations has been tolled with respect to Plaintiff's and Class members' claims.

## FACTUAL ALLEGATIONS

3

14.     This class action complaint seeks to remedy Defendants' conduct in connection with the special assessment fees that were deceptively represented as being associated with APA membership.

15.     The APA is the world's largest organization representing psychologists.

16.     Since 1986, the APA has been assessing clinicians a special fee with their annual dues. This fee, either referred to as a special assessment or practice assessment, was apparently designed for the purpose of funding additional healthcare psychological practice advocacy activities.

17.     These special assessment fees are generally more than half of the annual dues. For example, in 2009, the APA imposed a special assessment fee of $137 while the annual APA dues were $238.

18.     The APA has collected reportedly between $4.5 to 5 million per year over the last ten years.

19.     The APA acknowledged that it was illegal for a 501(c)(3) entity to engage in lobbying efforts and formed the APAPO as its "alter-ego" in 2001.

20.     According to the APA and APAPO's website, the special or practice assessment fee that Defendants collected has been to apparently fund the APAPO's stated goals, which include: fostering changes in federal law, protecting reimbursement rates in both public and private sectors, supporting lawsuits against abusive managed care practices and protecting the doctoral degree as the licensure standard.

21.     Since its inception, most APA members believed that the fee was simply part of their required annual dues. The APA has typically referred to the fee as mandatory and, up until 2002, explicitly described it on their website as "Licensed or certified members, Fellow, and Associate Members who *must pay* the Special Assessment include…"   PsychCentral, *"Did You Think that APA 'Mandatory Fee' Was Mandatory,"* by John M. Grohol, Psyd. (http://psychcentral.com/blog/archives/2010/06/02/did-you-think-that-apa-mandatory-fee-was-

mandatory/). The fee also comes on a pre-printed annual membership dues statement, which makes it seem like the fee is actually required like the annual dues.

22.    In early 2010, APA members began an online inquiry into the fee, and many for the first time learned (although albeit the online community) that it was actually a voluntary fee for membership in the APAPO lobbying organization.

23.    The APA subsequently, at some point, removed the word "must pay" from its website and provided information about the APAPO. However, its explanation of how dues actually go to the benefit of the APAPO is still reasonably understood as required rather than voluntary.

> "Licensed APA members who provide health or mental health services or supervise those who do pay the Practice Assessment to belong to the APA Practice Organization. The base Practice Assessment amount of $137 for 2010 is noted on the APA dues statement sent in September 2009. Several categories of members are able to claim an 'adjustment' that results in a reduced Practice Assessment or no payment due."

Practice Central, *The Practice Assessment: What You Need to Know,* (http://apapracticecentral.org/about/practice-assessment.aspx)

24.    To further deal with their prior misleading statements, on May 5, 2010, the APA's Board also issued the following statement explaining the purpose of the APAPO:

> "The special assessment was created by the APA Council of Representatives in 1982 as a 'mandatory assessment' beyond the regular dues payment for licensed healthcare psychologists to fund additional professional practice advocacy activities…The Council's action to create the APAPO did not alter the mandatory nature of the original special assessment. Payment of the practice assessment by licensed practioner members of APA is required for membership in APAPO. Practioners who pay the practice assessment (and the majority do) are members of both APA and APAPO. As was true with the original special assessment for practice advocacy, we do not terminate or deny membership in APA for those practitioners who fail to pay the practice assessment."

PsychCentral, *"Did You Think that APA 'Mandatory Fee' Was Mandatory,"* by John M. Grohol, Psyd. (http://psychcentral.com/blog/archives/2010/06/02/did-you-think-that-apa-mandatory-fee-was-mandatory/)

25.     This statement is likewise misleading as it again refers to the fee as mandatory, but then states that by not paying it, nothing is lost.

26.     *The APA board has now admitted to the deceptive nature of the fee.*  A newsletter issued by a division of the APA, stated that "the manner in which the APA, APAPO, and Division dues have been combined on past due statements does not make clear that the mandatory practice assessment payment is required for APAPO membership but not for APA membership" and that "the 2011 dues statement instructions will be modified to clarify this point."  Division 44 Newsletter, Society for the Psychological Study of Lesbian, Gay, Bisexual, and Transgender Issues, *A Division of the American Psychological Association*, Volume 26, Number 2 (Summer 2010)

## CLASS ACTION ALLEGATIONS

27.     This class action is properly brought pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure.  Plaintiff brings this class action on behalf of himself and the following proposed Class:

> All persons in the United States who are current or former members of the APA who paid a "special" or "practice" assessment as part of their annual APA dues (the "Class").

28.     Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by amendment or amended complaint.  Specifically excluded from the proposed Class are Defendants, their officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint venturers, or entities controlled by Defendants, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Defendants and/or their officers and/or directors, or any of them; the Judge assigned to this action, and any member of the Judge's immediate family.

29.     **Numerosity.**  Members of the Class are so numerous that their individual joinder is impracticable.  Plaintiff is informed and believes, and on that basis alleges, that the proposed

class contains hundreds of thousands of members. The precise number of class members is unknown to Plaintiff. Class members are known by Defendants, however, and thus, may be notified of the pendency of this action by direct mail, email, and supplemented by published notice.

30.    **Existence and Predominance of Common Questions of Fact and Law.** Common questions of fact and law predominate over any questions affecting only individual members of the Class. The predominating common or class-wide questions of fact include the following:

a.    The nature and extent of Defendants' prior knowledge of the material facts relating to the special assessment fee;

b.    Whether the description of the assessment fee was misleading such that APA members could interpret the fees as being mandatory to continue membership with the APA;

c.    Whether Defendants omitted, misrepresented, concealed or manipulated material facts from Plaintiff and the Class regarding the special assessment fee;

d.    Whether Defendants' conduct has caused Plaintiff and the Class to pay significant fees they otherwise would not have paid had they know the fee was not mandatory;

e.    Whether Plaintiff and the Class are entitled to damages and/or restitution;

f.    Whether Plaintiff and the Class are entitled to injunctive relief requiring the Defendant to cease the conduct discussed herein.

31.    Defendants' defenses, to the extent that any such defenses apply, are applicable generally to Plaintiff and the entire Class and are not distinguishable as to proposed Class members.

32.    **Typicality.** Plaintiff's claims are typical of the claims of the members of the Class as a whole, all of whom have sustained and/or will sustain damages, including irreparable harm, as a proximate or legal result of the common course of conduct of Defendants as

complained of herein. Plaintiff's claims are typical of the Class because Defendants subjected all Class members to the same course of conduct.

33.     **Adequacy.** Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the members of the Class he seeks to represent. Plaintiff has retained counsel highly experienced in the prosecution of complex class action litigation, and Plaintiff intends to prosecute this action vigorously. Plaintiff and his counsel will fairly and adequately protect the interests of all members of the Class.

34.     **Superiority.** A class action is superior to any other methods available for both fair and efficient adjudication of the rights of each Class member. Joinder of individual members of the Class is impracticable. Individual litigation would be unnecessarily costly and burdensome and would deter individual claims. To process individual cases would increase both the expenses and the delay not only to Class members, but also to Defendants and the Court. In contrast, a class action in this matter will avoid case management difficulties and provide multiple benefits to the litigating parties, including efficiency, economy of scale, unitary adjudication with consistent results and equal protection of the rights of each Class member, all by way of the comprehensive and efficient supervision of the litigation by a single court.

35.     In the alternative, the Class may be certified because:

a.     The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual members of the proposed Class that would establish incompatible standards of conduct for Defendants;

b.     The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

c.     Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to members of the Class as a whole.

## FIRST CLAIM FOR RELIEF
### (Misrepresentation)

36.     Plaintiff realleges and hereby incorporates all preceding paragraphs as if they were fully set forth herein.

37.     Defendants negligently and/or recklessly misrepresented various material facts regarding the special or practice assessment fee, and under circumstances where Defendants either knew or, in the exercise of reasonable care, should have known that the representations were not true or were not known to be true.  These misrepresentations were contained in various affirmations, descriptions, advertising, publications, the internet, correspondence and other communications from Defendants, and such misrepresentations were further reiterated and disseminated by the officers, agents, representatives, servants, or employees of Defendants acting within the scope of their authority.

38.     Defendants' misrepresentations were intended to induce the Plaintiff and the Class to pay the special or practice assessment fee.

39.     In reliance upon these misrepresentations, Plaintiff paid substantial monies to the APA under the belief that these fees were mandatory for APA members.  Had Plaintiff known the true facts, including but not limited to the fact that the special or practice assessment fees were not mandatory, he would not have paid such fees.

40.     As a direct and proximate result of Defendants' misrepresentations, Plaintiff has suffered economic losses for which Plaintiff is entitled to compensatory relief in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF
### (Negligence)

41.     Plaintiff realleges and hereby incorporates all preceding paragraphs as if they were fully set forth herein.

42.     Defendants had a duty to the Plaintiff and Class members, as an organization in which Plaintiff and the Class are or were members and representing psychologists, to exercise reasonable care in collecting dues and any other fees.

43.     Defendants' breached their duty to Plaintiff and the Class. Defendants' breach directly and proximately caused Plaintiff and the Class to pay special or practice assessment fees. Defendants were negligent in the collection of special or practice fees from Plaintiff and the Class.

44.     Plaintiff has suffered economic losses for which Plaintiff is entitled to compensatory relief in an amount to be proven at trial.

### THIRD CLAIM FOR RELIEF
### (Unjust Enrichment and Constructive Trust)

45.     Plaintiff realleges and hereby incorporates all preceding paragraphs as if they were fully set forth herein.

46.     Plaintiff and the Class are without an adequate remedy at law or, to the extent an adequate remedy may exist, this claim for relief is in the alternative.

47.     As a direct result of their conduct set forth in this Complaint, Defendants voluntarily accepted and retained the benefits of millions of dollars in total payments from Plaintiff and the Class that they would not have otherwise have had. As such Defendants have been unjustly enriched.

48.     Defendants caused Plaintiff and the Class to pay additional monies that were not mandatory, despite Defendants' representations and/or misleading statements, and as a direct and proximate result of Defendants' illegal conduct, Plaintiff and the Class paid and continue to pay special or practice assessment fees that are not mandatory as part of APA membership. Plaintiff and the Class are entitled to a restoration of their monies.

49.     Defendants voluntarily accepted and retained the benefit of Plaintiff's and Class members' payments with knowledge and awareness that, as a result of their wrongdoing,

Plaintiff and the Class paid special or practice assessment fees they would not have otherwise paid.

50.     Plaintiff and the Class are entitled in equity to seek restitution and disgorgement from Defendants' wrongful profits, revenues or other financial benefits to the extent and in the amount to be proven at trial.

51.     Plaintiff seeks the imposition of a constructive trust upon all unlawful or inequitable sums received by Defendants identified and traceable through payment of special or practice assessment fees paid by Plaintiff and the Class.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, on behalf of himself and all others similarly situated, prays for judgment against Defendants as follows:

1.     For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and his counsel of record to represent the Class;

2.     For restitution, disgorgement and/or other equitable relief as the Court deems proper, including notice to consumers who have been mislead by Defendants' practices.

3.     For a permanent injunction prohibiting Defendants from engaging in the conduct and practices complained of herein;

5.     For pre-judgment and post-judgment interest;

6.     For reasonable attorneys' fees and costs of suit, including expert witness fees; and

7.     For such other and further relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all issues so triable.

Dated: November 4, 2010                  **MASON LLP**


By: _____
Gary E. Mason (D.C. Bar No. 418073)
Donna F. Solen (D.C. Bar No. 465098)
1625 Massachusetts Avenue, NW, Suite 605
Washington, D.C. 20036
Telephone: (202) 429-2290
Facsimile:  (202) 429-2294

Mark J. Tamblyn
Neha Duggal
**WEXLER WALLACE LLP**
455 Capitol Mall, Suite 231
Sacramento, California  95814
Telephone: (916) 492-1100
Facsimile:  (916) 492-1124

Gregory F. Coleman
**GREG COLEMAN LAW PC**
550 Main Avenue, Suite 600
Knoxville, Tennessee 37902
Telephone: (865) 247-0080
Facsimile:  (865) 522-0049

Attorneys for *Plaintiff, individually and on behalf of the proposed Class*